BARRETT v. CITY OF NEW YORK et al. PLATT v. SAME. WELLS FARGO & CO. v. SAME.

(Circuit Court, S. D. New York. June 20, 1911.)

1. COMMERCE (§ 63*)—INTERSTATE COMMERCE—REGULATION—EXPRESS COMPANIES.

A person engaged in conducting an interstate express cannot be required by the state or municipal authorities to take out a local license as a prerequisite to conducting his interstate business within the state or municipality.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 103–122; Dec. Dig. § 63.*]

2. COMMERCE (§ 63*)—LICENSES—USE OF STREETS—EXPRESS WAGONS.

New York City ordinances, regulating express wagons using the streets of the city, requiring that they be licensed and marked with the word "express" and with their official numbers, that they be regularly inspected and pay a license fee of $5 for each wagon, that the drivers shall also be licensed and pay a license fee of 50 cents, were reasonable and applicable to delivery wagons of express companies engaged in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 103–122; Dec. Dig. § 63.*]

------

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** COMMERCE (§ 57*)—INTERSTATE COMMERCE—REGULATION—EXPRESS COMPANIES—BONDS.

Code of Ordinances of New York, c. 7, art. 3, § 322, requiring a bond of express drivers for each licensed vehicle, conditioned for the safe and prompt delivery of all packages, parcels, and other articles, was a legitimate exercise of the city's police power and applicable to wagons of express companies engaged in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 57.*

Regulations as to transportation of property as interference with interstate commerce, see note to Rupert v. United States, 104 C. C. A. 259.]

**4.** LICENSES (§ 5½*)—POWER OF MUNICIPAL CORPORATION—MOTOR VEHICLES.

Laws N. Y. 1910, c. 374, provides that local authorities shall have no power to pass, enforce, or maintain any ordinance, rule, or regulation requiring from any owner or chauffeur, to whom the law is applicable, any tax, fee, license, or permit for the use of public highways, or excluding any such owner or chauffeur from the free use of such public highways, and that no ordinance, rule, or regulation contrary to, or in any wise inconsistent with the provisions of the article, shall be of any effect. *Held* that, where an express company delivers packages in the city of New York by the use of automobiles in charge of licensed chauffeurs under such act, such vehicles and chauffeurs are not subject to an ordinance of the city licensing and regulating express wagons and drivers.

[Ed. Note.—For other cases, see Licenses, Dec. Dig. § 5½.*]

In Equity. Suits by William M. Barrett, as president of the Adams Express Company, by Edward T. Platt, as Treasurer of the United States Express Company, and by Wells Fargo & Co., against the City of New York and others. Decree for complainants.

Guthrie, Bangs & Van Sinderen, for complainants.

Archbald R. Watson (William B. Hale, of counsel), for defendants.

LACOMBE, Circuit Judge. These ordinances were fully discussed in the opinion filed in disposing of the motions for preliminary injunction in these three suits. (C. C.) 183 Fed. 793. Much testimony has been taken, but it merely establishes by competent proof what the court assumed to be the facts when the former decision was made. Neither the new proofs nor the exhaustive briefs which are now presented have induced the court to reach a different conclusion upon the main features of the case from that already expressed.

[1] It may be taken for granted that when the group of ordinances contained in chapter 7 of the New York Code of Ordinances were enacted—if they were enacted as a single piece of legislation, which we may assume to have been the fact—the board of aldermen had primarily in mind the licensing and otherwise regulating certain specified businesses included in the enumeration of section 51 of the Greater New York Charter (Laws 1901, c. 466). It is difficult to see how any one can read the first two sections without reaching this conclusion. Section 305 provides that "the following *businesses* must be duly licensed, as herein provided"; and section 306 provides that "no person shall engage in or carry on any such *business* without a license thereof" under certain specified penalties.

"Expressmen" are included in the enumeration of section 305, but it is abundantly settled by authority that a person engaged in conducting an interstate express cannot be required by the local or state au-

thorities to take out a local license as a prerequisite to conducting such interstate business in such locality. Complainant, therefore, is entitled to an injunction restraining defendants from taking any action to enforce complainant's compliance with the provisions of these two ordinances.

[2] Incidentally as part of the local legislation embodied in this chapter of the ordinances, regulations as to the use of the streets were adopted. They provide, among other things, that wagons used in express business shall be licensed and marked with the word "express" and their official numbers, and shall be regularly inspected by city inspectors, a license fee of $5 being charged for each wagon. It is further provided that the drivers of each of such wagons shall be licensed upon certificate as to competency, shall exhibit their official licenses on demand, and shall report any change of residence to the Bureau of Licenses. A license fee of 50 cents is required for each driver. The court has no doubt that it was within the power of the board of aldermen to prescribe such regulations, and believing these provisions to be clearly separable from those which regulate generally the doing of an express business (Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382), must decline to interfere with their enforcement for reasons sufficiently set forth in the former opinion. The amount of license fee charged is so small that it may fairly be considered merely as providing for the cost of oversight and inspection.

[3] It is also thought that the provision (section 322) requiring a bond to be given for each licensed vehicle in the penal sum of $100 conditioned for the safe and prompt delivery of all baggage, packages, parcels, and other articles is a legitimate exercise of the police power, which is not to be condemned because it affects interstate commerce.

[4] When the cause was considered on the application for preliminary injunction the use of automobiles by one of these express companies was not discussed. It now appears that the Adams Express Company operates upwards of 90 automobiles; the drivers of these are chauffeurs. The state has itself taken charge of the regulation of these high-powered machines in public thoroughfares; the vehicles themselves and the chauffeurs are licensed by the state. Chapter 374 of the Laws of 1910 provides that:

"Local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner or chauffeur, to whom this article is applicable, any tax, fee, license or permit for the use of the public highways, or excluding any such owner or chauffeur from the free use of such public highways * * * and no ordinance, rule or regulation contrary to, or in any wise inconsistent with the provisions of this article, now in force or hereafter enacted, shall have any effect."

These express company automobiles and chauffeurs have been duly licensed by the state. It is not quite clear whether or not defendants are seeking to require additional licenses for such vehicles and drivers to be taken out under the ordinances; but, if they are doing so, injunction may issue covering all such vehicles and drivers as hold state licenses.

Let a decree be entered in accordance with the views above expressed.